## Solomon Hampton *v.* The State.

*1. Murder—Circumstantial Evidence.*—To convict on circumstantial evidence, each fact necessary to the conclusion of guilt must be proved, by competent evidence, beyond a reasonable doubt; all the facts must be consistent with each other and with the main fact to be proved; and the circumstances, taken together, must be of a conclusive nature, leading to a satisfactory conclusion, and producing a reasonable and moral certainty, that the accused, and no other, committed the offense.

·2. *Same—Evidence.*—In criminal trials the guilt of the accused must be fully proved; and no weight of preponderant evidence constitutes full proof of guilt unless it generates full belief, to the exclusion of all reasonable doubt.

·3. *Same—Presumption of Innocence.*—In criminal trials the accused is entitled to the benefit of the legal presumption of innocence, which, in doubtful cases, is sufficient to turn the scale in his favor.

·4. *Same—Charge of the Court.*—In the present case, being a prosecution for murder, the evidence against the accused was largely circumstantial, and the testimony conflicting in some important respects. The accused asked the court to charge the jury that "a defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence." *Held,* that it was error to refuse the request, there being no equivalent instructions in the charges given.

Appeal from the District Court of Austin. Tried below before the Hon. L. W. Moore.

The indictment was against the appellant and Hezekiah Hampton, and charged them jointly with the murder of Henry Shackleford on the 6th of March, 1875.

Hezekiah Hampton, it was proved, was a son of the appellant, and a penitentiary convict who had escaped from his guards, of whom the deceased was one. On the night of the 5th of March, 1875, the deceased and J. M. Shamblin, another guard, together with the sheriff of Austin county, pursued Hezekiah to the appellant's house, in which he had taken refuge. The deceased took his stand at the front door, and the two others took different positions to surround the house. After some colloquy between them and

the inmates, a shot, according to the state's witnesses, was. fired from the inside, and the deceased exclaimed that he was shot, and about the same time a second shot was fired from the house; immediately after which, Hezekiah ran out of the house, and was pursued and captured by Shamblin and the sheriff.   Returning toward the house they found Shack--leford on the ground, twenty-five or thirty feet from the house, wounded in the breast with buck and smaller shot,. from the effects of which he died before morning.

The next day a shot-gun was found in the appellant's. house, one barrel of which had been recently discharged, the other being still loaded.

According to the evidence there was no direct proof as to. who fired the fatal shot.   The only inmates of the house were the appellant and his son Hezekiah, and their wives. The latter were examined for the defense, and swore posi-- tively that the appellant did not fire the gun and took no. part in the affray.

What became of Hezekiah, or of the case as against him,: is not disclosed in this record.

The appellant was found guilty of murder in the second degree, and his punishment assessed at six years in the peni--tentiary.

In the opinion of this court will be found such further· facts as are material.

*M. E. Kleburg,* for the appellant.

*George McCormick,* Assistant Attorney General, for the. State.

WINKLER, J.  On the trial of this cause in the court below· the defendant's attorneys asked the court to charge the. jury as follows:

" 1st.  That, where the prosecution relies on circumstantial evidence, the circumstances must be of a conclusive nature.  ,

and tendency, excluding any other hypothesis than the guilt of the party accused.

" 2d. In order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved, by competent evidence, beyond a reasonable doubt, and producing, in effect, a reasonable and moral certainty that the accused, and no other person, under the evidence, could have committed the offense charged.

" 3d. If, after hearing all the evidence—as well that given by the defendant as that given by the state—the jury believe that the death of Henry Shackleford may have been caused by any other person than Solomon Hampton, then you will acquit him.

" 4th. That, although a man be present whilst a felony is committed, if he take no part in it, and do not act in concert with those who commit the felony, he will not be a principal merely because he did not endeavor to prevent the felony or apprehend the felon.

" 5th. A defendant in a criminal cause is presumed to be innocent until his guilt is established by legal evidence."

These charges were refused, and the refusal of the court to give them is made one of the grounds set out in the motion for new trial, which was overruled, and the action of the court is assigned as error.

On the subject set out in the charges refused the court charged the jury as follows :

" All parties, knowing the unlawful intent of the party killing, who were present, consenting thereto, and aiding or abetting, either by furnishing the weapons of attack, encouraging by words or gestures, or endeavoring at the time of the commission of the offense to secure the safety or concealment of the offender, are principals and equal offenders, and subject to the same punishment, without reference as to which of the offenders fired the fatal shot or gave the

·deadly blow.   The mere presence of a party when an offense
is committed affects him with no crime, unless he knows the
unlawful intent, consenting thereto, and aiding in some of
the forms as before expressed.   So far as this offense rests
upon circumstantial testimony, you are instructed that the
·circumstances must be of such a conclusive nature as to
·exclude any other reasonable hypothesis than the guilt of
the party to support a conviction.   What the character of
that testimony, and what that amount, to justify conviction,
·cannot be explained by general definitions; each case must
furnish its own tests.   It is enough if it satisfy an honest
and fair mind, of average ability, carefully and conscien-
tiously seeking for truth, beyond a reasonable doubt, of the
guilt of the party.   If you have any reasonable doubt of
the guilt of the accused you will acquit.''

In law all are principals who are guilty of acting together
in the commission of an offense.   When an offense is actually
·committed by one or more persons, but others are present,
.and, knowing the unlawful intent, aid by acts, or encourage
by words or gestures, those actually engaged in the com-
mission of the unlawful act, or who, not being actually
present, keep watch, so as to prevent the interruption of
those engaged in committing the offense, such persons so
aiding, encouraging, or keeping watch are principal offend-
ers, and may be prosecuted and convicted as such.   And
.any person who advises or agrees to the commission of an
offense, and who is present when the same is committed, is
:a principal thereto, whether he aids or not in the illegal act.
Penal Code, Arts. 214, 215, 218; Pasc. Dig., Arts. 1809,
1810, 1813.

As to the conclusiveness of the evidence necessary to
convict of crime on circumstantial evidence alone, the rule
is correctly laid down in *Commonwealth* v. *Webster*, 5 Cush.
296, *et seq.*, and embodied in note 3 to section 29, 3 Greenl.
·on Ev., where the subject is discussed at length, as follows:

"In order to warrant a conviction of crime on circum-- stantial evidence, each fact necessary to the conclusion sought to be established must be proved, by competent evidence, beyond a reasonable doubt; all the facts must be consistent with each other, and with the main fact sought to be proved; and the circumstances, taken together, must be of a conclusive nature, and leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused, and no other person, committed the offense charged." Which is but the general rule laid down by the author in the section referred to, and to which the note quoted is appended:

" In criminal trials the party accused is entitled to the bene-- fit of the legal presumption in favor of innocence, which, in doubtful cases, is always sufficient to turn the scale in his favor. It is, therefore, a rule in criminal law that the guilt of the accused must be fully proved. Neither a mere pre-- ponderance nor any weight of preponderant evidence is sufficient for the purpose, unless it generate full belief of the fact, to the exclusion of all reasonable doubt." And as was said again in *Webster's Case*, above mentioned, discuss- ing the subject of reasonable doubt: " All the presump- tions of law, independent of evidence, are in favor of inno- cence, and every person is presumed to be innocent until he is proved guilty. If upon such proof there is a reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal, for it is not sufficient to establish a proba- bility, though a strong one, arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty—a certainty that convinces and directs the understanding, and satisfies the reason and judgment, of those who are bound to act, conscientiously upon it. This we take to be proof beyond reasonable doubt, because if the law, which mostly depends

upon considerations of a moral nature, should go further than this, and require absolute certainty, it would exclude circumstantial evidence altogether.''

'' A defendant in a criminal cause is presumed to be innocent until his guilt is established by legal evidence ; and, in case of reasonable doubt as to his guilt, he is entitled to be acquitted.''    Code of Cr. Pro., Art. 640 ; Pasc. Dig., Art. 3105.

By comparing the charge given to the jury, and those which were refused, with each other, and with the law as above stated, and the evidence adduced on the trial below, it will be seen that the 1st, 2d, 3d, and 4th charges asked are substantially given in the general charge, and in a manner not calculated to mislead, and as favorably to the accused as the evidence warranted.

With reference to the 5th charge asked and refused—viz., '' A defendant in a criminal cause is presumed to be innocent until his guilt is established by legal evidence''—we are of opinion the court erred in refusing to give it.    On this branch of the subject we might content ourselves by referring to the case of *Black* v. *The State*, decided by this court at the Tyler term, 1876, *ante* p. 368, and to the authorities there cited, where it will be seen that, in a case like the present in many respects, it was held to be error to refuse a similar instruction.    In that case, as in this, the court, in the general charge, had in effect instructed the jury that if they entertained, from the evidence, a reasonable doubt as to the guilt of the accused, he was entitled to be acquitted ; but in that case, as in this, the judge, in the principal charge, omitted to charge specially as to the presumption of innocence, either in the language of the Code or, substantially, in other language.    In that case the counsel for the accused asked the court to charge the jury on the subject in the language of the statute, which charge was refused ; and in that case, after a thorough examination

42

of authorities, this court said the instruction refused was in the exact language of the law, and held that " it was the law, and, be it much or little, the defendant was entitled to all of it, and it should have been given ; and especially in a case like the one at bar, where the life of a fellow-being was at stake, and where all the evidence against him was circumstantial." As to the necessity of giving the instruction as to the presumption of innocence, see, particularly, the cases of *Long* v. *The State*, 46 Ind. 589, and *Line* v. *The State*, 51 Ind. 175, which, in *Black's Case*, were held to be in point, being, under certain provisions of the Code of Criminal Procedure of that state, quite similar to the provisions of our own Code on the subject.

In the present case the charge asked and refused is in the exact language laid down in the statute. A conviction was sought on evidence largely circumstantial, and the evidence adduced on the part of the prosecution tends in one direction, whilst the evidence on the part of the defendant tends in the opposite direction in some important features. It is believed that, upon a further investigation of authorities, it will be found that, at least in all capital felonies, where the evidence is at all doubtful, the jury should be instructed that the accused is entitled to the legal presumption of innocence, on the ground that if they are not so instructed it is not seen how the accused is to avail himself of it when the jury come to make up their minds as to whether the accused is guilty or not.

This presumption of innocence, though not strictly evidence in favor of the accused, yet has, to the extent it goes, the effect of evidence—sufficiently so to turn the scale in a doubtful case in his favor, and produce his acquittal.

The two Indiana cases above cited clearly support this view. Wherever the subject is discussed it is found in connection with the subject of evidence. On this same subject Mr. Bishop, in his work on Criminal Procedure (vol. 1, sec.

503), quotes approvingly from the opinion of the supreme court of Alabama, decided by Chief Justice Rice, as follows: " In a criminal case the establishment of a *prima facie* case does not, as in a civil case, take away from the defendant the presumption of innocence, or change the burden of proof. A solid reason for the distinction is the well-known difference in the measure of proof in the two classes of cases. In a civil case the plaintiff is not required to prove, beyond a reasonable doubt, the facts on which he relies for a recovery ; and, therefore, when he establishes a *prima facie* case the burden of proof is thereby shifted, and the *prima facie* case so established entitles him to recover, unless it is destroyed by proof from the other party. But in a criminal case the state is required to prove, beyond all reasonable doubt, the facts which constitute the offense. The establishment, therefore, of a *prima facie* case merely does not take away the presumption of innocence from the defendant, but leaves the presumption to operate with, or in aid of, any proofs offered by him to rebut or impair the *prima facie* case thus made out by the state."

Mr. Greenleaf says : " This presumption of innocence is so strong that, even where the guilt can be established only by proving a negative, the negative must, in most cases, be proved by the party alleging the guilt."

Mr. Burrill, in his treatise on Circumstantial Evidence, after mentioning the reasons for the rules governing presumptions of fact in civil cases, says : " But in criminal investigations, especially in those which may result in the infliction of extreme punishment, the case is directly reversed. The interest of the individual whose conduct is the subject of inquiry is here the leading consideration, to which those of supposed general utility are always made to yield.

" This," says the writer, " is very forcibly illustrated by those two great cardinal maxims which may be said to be

written on the portals of every criminal court, and to hang over an accused, like an ægis of protection, from the moment he is placed at its bar for trial.'' The first of these two great cardinal maxims is : '' Every person is presumed to be innocent until found guilty.'' Proceeding, the author says : '' In these cases it becomes essential that the range of inquiry should be enlarged in proportion to the magnitude of the interests at stake ; that truth should be drawn from its natural sources by natural processes, unfettered, as far practicable, by arbitrary and inflexible rules. And these objects are very effectually secured by the composition of the tribunal itself to which the decision of criminal issues is exclusively confided. Hence it happens that the great mass of those presumptions with which juries are authorized to deal, and upon which their verdicts are constantly founded, are of that class of which the unaided ' common sense' of men is competent to deduce from facts proved. In other words, they are natural presumptions, or presumptions of fact.'' Burrill on Cir. Ev. (2d ed.) 58, 59.

That the burden of proof is always on the state—to establish beyond a reasonable doubt the guilt of one accused of crime—will not require a further reference to authority.

From the above authority it will be seen that much importance attaches to this legal presumption of innocence, and that, in all cases at all doubtful, it is sufficient to turn the scale in favor of the accused.

It is made the duty of the judge, in all cases of felony, to give the jury a written charge, in which he must distinctly set forth the law applicable to the case as made by the proofs ; and a failure on the part of the judge so to charge will be cause of reversal, as has repeatedly been held by both the supreme court and by this court.

The law on the subject of reasonable doubt and the presumption of innocence, both, are embraced in a nut-shell in the provision of the Code. That law is that a defendant in

a criminal case is presumed to be innocent until his guilt is established by legal evidence, and in case of a reasonable doubt as to his guilt he is entitled to be acquitted.

Can it be said that in any doubtful case the judge has complied with the requirements of law to charge the law applicable to that particular case, when he has been asked, and has refused, to tell the jury that one accused and on trial for crime is presumed to be innocent until his guilt is established by legal evidence, and beyond a reasonable doubt? Much trouble has been occasioned by attempts to make plain what is clear and unambiguous in the statute above quoted—to explain what is meant by the expression, " a defendant is presumed to be innocent until his guilt is established by legal evidence," and a " reasonable doubt ;" all of which must be apparent by carefully reading the Article in the Code. And it cannot be doubted that in these attempts errors are often committed which might be avoided by simply giving in charge the statute itself ; and it cannot have failed of observation that by these efforts at explanation the jurors are misled and their minds confused, to the injury of the accused, making appeals and reversals necessary, and often preventing a certain and speedy enforcement of the criminal law. Such are, in many cases, the results of embodying in instructions to the jury mere abstract principles of law not necessary to the case, instead of charging in plain language the law of the case, and no more, and leaving to the jury to determine what has been satisfactorily and clearly proved, or what has been proved beyond a reasonable doubt.

The rule that a judgment shall not be disturbed which is right on all the testimony has been held in Kentucky and Tennessee to apply only to civil cases, not to criminal cases ; and, therefore, says Mr. Bishop, " whenever the court rejects evidence which has a direct bearing on the question of guilt or innocence, and the defendant is convicted, a new trial

should be granted on his application." The author, further treating the subject and applying the rule, says:

" Meanwhile, let it be observed that the protection of the court is, according to the general principles of our jurisprudence, cast especially over men who are indicted for high crimes. And it is not easy to see how, consistently with this doctrine, a judge, having it legally in his power to set aside a verdict, can sentence a defendant to imprisonment or to death when, for any reason which presents itself judicially to his understanding, his judgment refuses to concur with the jury on the conclusion of guilt."

We see no reason why the rule or the reasons therefor do not apply with the same force when the error consisted in refusing a proper instruction as when the error was in refusing to admit proper evidence. These considerations address themselves forcibly to the district courts in connection with the subject. When the case of the appellant was before the supreme court the conviction was set aside, and, in effect, a new trial awarded, for the reasons set out in the opinion of the court, as follows: " The evidence entitled the appellant to have his case passed upon by the jury, under a proper charge from the court. Believing that the law as applicable to the case of appellant was not sufficiently charged to the jury, and that the court erred in refusing to give the instruction asked by the appellant, and before noticed, the judgment is reversed and the cause remanded." Unpublished opinion, Galveston term, March 20, 1876.

It should be observed that the objections to the charge in the former trial were removed on the last, so far as we can determine by the opinion in the first trial. It does not appear that on the first trial an instruction on the subject of the presumption of innocence was given, or, as in the present case, was asked and refused. For a like reason as in the former case, to wit, that the law applicable to the case was not sufficiently charged to the jury and that the

court erred in refusing to give the instruction asked by the appellant, the judgment must again be reversed and the cause remanded.

Other matters are presented in the record, and have been discussed by counsel, which have not been considered by the court, for the reason that they are not likely to occur on a subsequent trial. We may add, however, that the accused, under the law, could not hereafter be convicted of a higher grade of crime than murder in the second degree.

The judgment of the district court is reversed and the cause remanded.

*Reversed and remanded.*